[ECF Nos. 33, 35, 43]

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **WILLIAM A. LEONARD, JR.**, <br><br> **Plaintiff,** <br><br> v. <br><br> **EDWARD BAYUK, et al.,** <br><br> **Defendants.** | Civil No. 23-21314 (ESK)(EAP) |

### REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Edward Bayuk's Motion to Vacate Default. ECF No. 33 (Def.'s Motion).[1] Plaintiff William A. Leonard, Jr. opposes the motion and also brings a Cross-Motion for Default Judgment. ECF No. 35 (Pl.'s Opp.). Defendant filed a reply brief in support of his motion and opposition to Plaintiff's cross-motion. ECF No. 39 (Def.'s Reply). After Defendant's motion was fully briefed and ripe for decision, Defendant filed a separate motion to set aside default judgment under Federal Rule of Civil Procedure 60. ECF No. 43, Def.'s Independent Action.[2] For the reasons to be discussed, it is respectfully recommended that Defendant's Motion to Vacate Default be denied with prejudice; Plaintiff's Cross-Motion for Default Judgment be granted; and Defendant's "Independent Action" for Relief from Default

---

[1] Defendant identifies his motion as a motion to set aside default judgment under Federal Rule of Civil Procedure 60(b)(3). That is incorrect. No default judgment has been entered against Defendant in this matter. *See generally* Dkt. Sheet. Instead, Defendant's motion seeks to vacate the Clerk's entry of default against him, which is evaluated under Federal Rule of Civil Procedure 55(c). *See* ECF No. 8 (Clerk's Entry of Default). The Court refers to Defendant's motion as a motion to vacate default for purposes of this Report and Recommendation.

[2] Defendant identifies his second motion as an "Independent Action," seeking relief from default judgment under Federal Rule of Civil Procedure 60(b)(3). Again, the Court notes that no default judgment has been entered against Defendant in this matter. To the extent that Defendant is seeking prospective relief from default judgment, his "Independent Action" is premature.

Judgment be denied without prejudice. This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1), and the Court makes the following findings in support.

## FACTUAL BACKGROUND

Plaintiff William A. Leonard, Jr. is a Chapter 7 trustee appointed in the bankruptcy case of debtor Paul A. Morabito filed in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"). ECF No. 35-2, Declaration of William A. Leonard ("Leonard Decl.") ¶ 1. In an adversary proceeding captioned *Leonard v. Morabito, et al.*, Adv. No. 15-5046, the Bankruptcy Court awarded Plaintiff a money judgment against Defendant Bayuk individually and as the trustee of the Meadow Farms Trust, and the Meadow Farms Trust on February 2, 2021. ECF No. 1, Compl. ¶ 15 & Ex. B (Bankruptcy Judgment). The Bankruptcy Court had concluded that the defendants in that case "had transferred specified property with actual intent to defraud creditors." Leonard Decl. ¶ 3 & Ex. B. Paragraph 9 of the judgment awarded Leonard his recoverable costs and attorneys' fees. *Id.* ¶ 3 & Ex. B at 3, ¶ 9.

On March 16, 2021, the Clerk of the Bankruptcy Court entered a Bill of Costs against the debtors jointly and severally, including Defendant Bayuk, in the amount of $18,279.31. *Id.* ¶ 16 & Ex. C at 1 (Bill of Costs). On January 25, 2022, the Clerk of the Bankruptcy Court ordered payment of Plaintiff's attorneys' fees in the amount of $547,687 against the debtors jointly and severally. Compl. ¶ 17 & Ex. D (Fee Order). The Bankruptcy Judgment, Bill of Costs, and Fee Order collectively constitute an enforceable money judgment against the debtors in the Nevada bankruptcy proceedings, which includes Defendant Bayuk. Compl. ¶ 18 & Ex. A.

On August 24, 2022, Defendant Bayuk transferred his title and ownership of the property listed at 98 Audrey Place, Trenton,[3] New Jersey 08619 (the "Property") to Defendant

---

[3] Plaintiff identifies the Property at issue as being located in Trenton, New Jersey. However, the Court notes that the deed, *see* Leonard Decl., Ex H, and Defendant, *see* Def.'s

2

MAXTMAX, LLC for the stated consideration of $1.00.  Leonard Decl. ¶¶ 9, 10 & Exs. G (Deed), H (Assessed Value Report), I (Deed, Aff. of Consideration).  Defendant Bayuk recorded the Deed with the Mercer County Clerk's Office on August 26, 2022.  *Id.* ¶ 10 & Ex. I.

On October 18, 2023, Plaintiff registered the Judgment in the United States Bankruptcy Court for the District of New Jersey in *Leonard v. Bayuk*, Case No. 23-00107-MEH.  *Id.* ¶ 7 & Ex. E (Judgment).  On October 3, 2024, Plaintiff served an Information Subpoena on Defendant Bayuk in accordance with Federal Rule of Civil Procedure 69(a)(2) and the relevant state court rules.  *Id.* ¶ 8 & Ex. F (Information Subpoena).  Defendant Bayuk did not respond to the Information Subpoena.  *Id.*  This action followed.

## **PROCEDURAL HISTORY**

On October 19, 2023, Plaintiff filed the Complaint against Defendants Edward Bayuk and MAXTMAX LLC.  *See generally* Compl.  The Complaint alleges that Defendant Bayuk transferred the residential real property in Trenton, New Jersey to Defendant MAXTMAX, LLC "with actual intent to defraud his creditors, including [Plaintiff]," as defined under the New Jersey Uniform Voidable Transactions Act (the "NJUVTA").  *Id.*, Count I, ¶¶ 21-22.  The Complaint also alleges that at the time of the execution and transfer, Defendant Bayuk "received less than reasonably equivalent value in exchange for executing and delivering the Deed and transferring the Property."  *Id.*, Count II, ¶ 24.  Specifically, when the transfer occurred, Plaintiff alleges that

> Bayuk (i) was engaged or was about to engage in a business or a
> transaction for which his remaining assets were unreasonably small
> in relation to the business or transaction, or (ii) intended to incur, or

---

Motion ¶ 10, identify the Property as being located in Hamilton Township, New Jersey.  According to Hamilton Township's website, "the United States Post Office officially considers" Hamilton as Trenton.  *See* https://www.hamiltonnj.com/FAQ.aspx?QID=179 (last visited May 15, 2025) *archived at* https://perma.cc/SVH6-3MWE.  The Court takes judicial notice of this fact because it is publicly available information listed on a government website. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (noting that a court may take judicial notice of information made publicly available by government entities).

> believed or reasonably believed that it would incur, debts beyond his ability to pay as they became due.

*Id.*, Count II, ¶ 25.  As relief, Plaintiff seeks to avoid the Deed and the transfer of the Property from Bayuk to MAXTMAX pursuant to the NJUVTA, and that Plaintiff be granted leave to levy execution against the Property to satisfy the judgment against Bayuk entered in the bankruptcy action.  *See id.*, Counts I, II (Wherefore Clauses).

Plaintiff properly served MAXTMAX with the Summons, Complaint, and Notice of *Lis Pendens* on October 24, 2023.  *See* ECF No. 4 (Aff. of Service); ECF No. 8-1, Declaration of Tod S. Chasin ("Chasin Decl.") ¶ 3.  Soon after, on October 26, 2023, Plaintiff properly served Defendant Bayuk.  *See* ECF No. 5 (Aff. of Service on Bayuk); Chasin Decl. ¶ 6. Neither MAXTMAX nor Bayuk responded to the Complaint. Chasin Decl. ¶¶ 5-6, 7-8.

On November 21, 2023, Plaintiff filed a request for a Clerk's entry of default against Bayuk and MAXTMAX for failure to plead or otherwise defend against the Complaint, which the Clerk granted the following day.  *See* ECF No. 8 (Request for Entry of Clerk's Default); Dkt. Sheet (Clerk's Entry of Default).  Bayuk requested an extension of time to respond to the Complaint, but because the Clerk had already entered default, the Court granted Bayuk leave to file a motion to vacate default.  *See* ECF No. 10 (Text Order).

On January 4, 2024, Defendant Bayuk timely filed his first motion to vacate default.  ECF No. 12  (Def.'s First Motion).  On January 16, 2024, the Court denied Defendant's motion without prejudice because the motion was deficient.  *See* ECF No. 16 (Order, Jan. 16, 2024).  The Court granted Defendant leave to file a renewed motion to vacate default but cautioned that any renewed motion "must include a brief that sets forth sufficient facts and explains with specificity how those facts bear on the three factors . . . governing a request to vacate default under Rule 55(c)."  *Id.* at 2 (footnote omitted).

4

On February 6, 2024, Defendant filed a renewed motion to vacate default. *See* ECF No. 17 (Def.'s Second Motion). The Court again denied Defendant's motion without prejudice because the motion was deficient. *See* ECF No. 22 (Order, Aug. 14, 2024). The Court similarly cautioned Bayuk that any renewed motion must address the good cause factors under Rule 55(c). *Id.*

On September 3, 2024, Defendant Bayuk filed a third motion to vacate default. *See* ECF No. 28 (Def.'s Third Motion). The Court again denied Defendant's motion without prejudice. *See* ECF No. 32 (Order, Oct. 19, 2024). The Court reiterated that any renewed motion must address the Rule 55(c) good cause factors. *Id.* The Court also noted that any renewed motion that did not address those factors would result in the undersigned recommending to District Judge Edward S. Kiel that the motion be denied with prejudice. *Id.*

On November 19, 2024, Defendant Bayuk filed the present Motion to Vacate Default. ECF No. 33 (Def.'s Motion). Plaintiff opposed the motion and filed a cross-motion for default judgment. *See* ECF No. 35 ("Pl.'s Opp."). On January 6, 2025, Defendant filed a reply brief in support of his motion and in opposition to Plaintiff's cross-motion. ECF No. 39 ("Def.'s Reply"). This matter is now fully briefed and ripe for decision.

## DISCUSSION

**A.     Defendant's Motion to Vacate the Clerk's Entry of Default Under Federal Rule of Civil Procedure 55**

Federal Rule of Civil Procedure 55 governs the entry of default by the Clerk of the Court in civil cases. That rule provides in pertinent part:

> [W]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

5

Fed. R. Civ. P. 55(a).

Once the Clerk has entered default, Federal Rule of Civil Procedure 55(c) states that "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). Although a decision to set aside the entry of default is left primarily to the district court, the United States Court of Appeals for the Third Circuit has stressed that it "does not favor entry of defaults or default judgments." *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, "doubtful cases [must] be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" *Id.* at 194-95 (quotations omitted); *see also Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 137 (3d Cir. 2017) (noting that entry of default judgment is an "extreme sanction" that is "generally disfavored").

Motions to vacate a default are held to a lesser standard and granted more readily than motions to vacate a default judgment. *HEI Invs., LLC v. Black Diamond Cap. Appreciation Fund, LP*, No. 15-746, 2016 WL 952338, at *2 (D.N.J. Mar. 14, 2016) (citation omitted). When analyzing either a motion to set aside or vacate the entry of default, a court must consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether default was the result of the defendant's culpable conduct." *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

The Court liberally construes the present motion because Defendant is proceeding *pro se* in this litigation.[4] However, even under less stringent standards, the Court finds it difficult to weigh any factor in Defendant's favor because he has not made any arguments for why there is good cause to vacate the Clerk's entry of default. Nor has Defendant asserted any facts that the

---

[4] *See Bivings v. Wakefield*, 316 F. App'x 177, 181 (3d Cir. 2009) ("We construe *pro se* filings liberally, and hold them 'to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

Court may consider in determining whether good cause exists. In the Court's most recent Order denying Defendant's third motion to vacate default, the Court specifically instructed Bayuk that any further motions seeking the requested relief "**must** conform with the directives provided herein and in the Court's previous orders . . . or he may face a recommendation from the undersigned to the Hon. Edward S. Kiel, U.S.D.J. that the requested relief be *denied with prejudice*." ECF No. 32 (Order) (emphasis in original). Specifically, the Court instructed Defendant that any renewed motion seeking the requested relief must address the three good cause factors under Rule 55(c). Nothing in Defendant's moving papers or in his reply provides any basis to consider whether he has demonstrated good cause. And even though Defendant did not make such arguments, Plaintiff presents arguments for why good cause does not exist. The Court considers each factor in turn.

    1.    <u>Prejudice to Plaintiff</u>

The first factor requires the Court to consider the potential prejudice a plaintiff would suffer if default were vacated. "[P]rejudice accrues due to the loss of evidence, increased potential for fraud or collusion, or a substantial reliance on the judgment." *HEI Invs., LLC v. Black Diamond Capital Appreciation Fund, LP,* No. 15-746, 2016 WL 952338, at *3 (Mar. 14, 2016) (citing *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 657 (3d Cir. 1982)). Delay, without more, "rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceeding." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) (alteration in original) (quoting *Feliciano*, 691 F.2d at 656-57); *see also Sunoco, Inc. (R&M) v. Global Recycling & Demolition, LLC*, 300 F.R.D. 253, 256 (E.D. Pa. 2014) ("'Delays in Plaintiff's potential recovery . . . do not constitute the kind of prejudice the Court should consider in deciding whether to set aside an entry of default.'" (quotation omitted)). Nor does "the inconvenience and expense to a plaintiff of having to litigate on the merits . . . rise to the level of

7

prejudice required." *Brink v. Borman*, No. 23-497, 2024 WL 3159433, at *5 (D.N.J. June 25, 2024) (quoting *Julaj v. Tau Assocs. LLC*, No. 12-1464, 2013 WL 4731751, at *4 (D.N.J. Sept. 3, 2013)). Nonetheless, "considerable delays, especially those that might stretch on indefinitely, are sufficient to show prejudice to the plaintiff." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014) (cleaned up).

Here, Plaintiff does not assert that vacating default would result in the loss of relevant evidence or increase the potential for fraud or collusion. Nor does he argue that vacating default would prevent Plaintiff from pursuing his claims on the merits. Instead, Plaintiff argues that vacating default would be prejudicial because it would prolong proceedings before this Court and in the Bankruptcy Court. Pl.'s Opp. at 9. Plaintiff's point is well taken. This matter has been pending for well over a year, during which time Defendant has moved on four separate occasions to vacate default. Each of the three previous motions has been denied without prejudice for failing to provide any facts or arguments that the Court could consider in its good cause analysis. Given Defendant's delays thus far, it is reasonable to expect that this matter will continue to trudge along indefinitely. As noted above, however, delayed recovery alone does not constitute sufficient prejudice to tip the analysis in Plaintiff's favor. Therefore, the Court finds that the first factor slightly weighs in favor of vacating default.

  2. <u>Meritorious Defense</u>

The second factor requires the Court to consider whether the defendant has a meritorious defense. "A 'meritorious defense' is a defense which, if established at trial, would completely bar a plaintiffs' recovery." *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting, LLC*, No. 17-5739, 2021 WL 3674353, at *4 (D.N.J. Aug. 19, 2021) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No.

8

11-7137, 2012 WL 3018062, at *4 (D.N.J. July 24, 2012)).  To determine whether a meritorious defense exists, courts "must analyze the nature of the claims and the defenses thereto." *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 307 (E.D. Pa. 1995) (citation omitted); *see also $55,518.05 in U.S. Currency*, 782 F.2d at 195 (looking at the underlying action to determine what would constitute a successful defense).  A "mere recitation of the relevant statutory language or a phrase from the Federal Rules of Civil Procedure" is not enough to demonstrate a meritorious defense under Rule 55(c).  *$55,518.05 in U.S. Currency*, 728 F.2d at 196.  Instead, the defendant must assert facts supporting the existence of a meritorious defense rather than simply denying the allegations of the complaint.  *NuMed Rehab., Inc. v. TNS Nursing Homes of Pa., Inc.*, 187 F.R.D. 222, 224 (E.D. Pa. 1999).  Ultimately, however, the court "need not decide the legal issue"; rather, it may simply make a finding that the "proffered defense is not 'facially unmeritorious.'" *Emcasco*, 834 F.2d at 73-74 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983)).  "In cases seeking to vacate only the entry of default, as opposed to the default judgment, 'courts in this circuit seem unwilling to deny the motion to set aside entry of default *solely* on the basis that no meritorious defense exists.'" *DirecTV, LLC v. Alvarez*, No. 15-6827, 2017 WL 4284526, at *3 (D.N.J. Sept. 27, 2017) (emphasis added) (quoting *Mike Rosen & Assocs., P.C. v. Omega Builders*, *Ltd.*, 940 F. Supp. 115, 121 (E.D. Pa. 1996)).

Here, Plaintiff's claims arise under the New Jersey Uniform Voidable Transactions Act. N.J.S.A. 25:2-20 to -33.  Section 25:2-25 of the NJUVTA states in relevant part:

> a. A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

    (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

      (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtors were unreasonably small in relation to the business or transaction; or

      (b) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

  b. A creditor making a claim for relief under subsection a. of this section has the burden of proving the elements of the claim for relief by a preponderance of the evidence.

N.J.S.A. 25:2-25. "In order to determine whether an actual intent to hinder or defraud existed, courts look to see whether 'badges of fraud' are present." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 747 (D.N.J. 2013).[5] "While a finding of one badge of fraud may cast suspicion on the transferor's intent, a finding of several badges in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id.* at 747-48. As the statute makes clear, Plaintiff bears the burden of proving the elements. N.J.S.A. 25:2-25(b).

  Here, Plaintiff argues that Defendant Bayuk "has not even attempted to establish that his conveyance of his family home . . . is anything other than a voidable transfer." Pl.'s Opp. at 8. The Court agrees. Defendant has not presented any factual allegations that would negate his status as a debtor. Nor is there any dispute that Bayuk transferred the Property from himself to

---

[5] Relevant badges of fraud that may apply to the present matter include whether "before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit"; "the transfer was of substantially all the debtor's assets"; "the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred"; and "the transfer occurred shortly before or after a substantial debt was incurred . . . ." *Jurista*, 492 B.R. at 747 (quoting *Meiselman v. Hamilton Farm Golf Club LLC*, No. 11-0653, 2011 WL 3859846, at *8 (D.N.J. Sept. 1, 2011)); *see also* N.J.S.A. 25:2-26 (listing "badges of fraud" factors to determine intent).

MAXTMAX. Indeed, Defendant admits MAXTMAX now owns the Property and that he is the managing member of the limited liability company. *See* Leonard Decl. ¶ 10 & Ex. I; Def's Motion ¶ 10. The Deed transferring the ownership of the Property contains an Affidavit of Consideration listing consideration in the amount of $1.00; identifies Edward Bayuk as the grantor; identifies the Property by the address listed in the Complaint; and contains Bayuk's own signature. *See* Leonard Decl., Ex I. Indeed, Defendant himself admits that he spent $210,000 to purchase the Property, and $470,000 to fix it up for his late mother. *See* Def.'s Reply ¶ 6. At no point does Defendant attempt to explain the difference between the price for which he purchased the Property and the $1.00 price he received when he transferred the Property to MAXTMAX.[6]

Defendant's sole defense here challenges the legitimacy of the legal proceedings in the Bankruptcy Court in the District of Nevada. Def.'s Motion ¶ 21. Those facts, however, have no bearing on the question of whether Defendant made a transfer with actual intent to hinder his creditors or made a transfer without receiving reasonably equivalent value in exchange, as outlined in the NJUVTA. Even under the less stringent standards afforded to *pro se* litigants, the Court is unable to identify any arguments or facts in Defendant's submissions that would demonstrate a facially meritorious defense. Therefore, the Court finds that the second factor weighs against vacating default.

3. <u>Culpable Conduct</u>

The final factor examines "whether the default was the result of the defendant's culpable conduct." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (citations omitted). "Culpable conduct surpasses mere negligence and consists of willful, intentional, reckless or bad faith behavior." *Malibu Media, LLC v. Waller*, No. 15-3002, 2016 WL 184422, at *4 (D.N.J. Jan. 15, 2016)

---

[6] Plaintiff contends that these facts constitute prototypical "badges of fraud." Pl.'s Opp. at 11.

(quotations omitted). "Although reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard, a mere failure to respond to a claim despite having notice is generally not culpable conduct." *Id.* (cleaned up) (citing *Wingate Inns Int'l v. P.G.S., LLC*, No. 09-6198, 2011 WL 256327, at *4 (D.N.J. Jan. 26, 2011) (finding no culpable conduct where failure to respond "was the result of miscommunication and ignorance, not bad faith or strategy")). The court must also consider the extent to which the error is attributable exclusively to the defendant's counsel. *Momah*, 161 F.R.D. at 308.

Here, the Court has instructed Defendant on three separate occasions that any renewed motion seeking to vacate default must address whether there is good cause. *See* ECF Nos. 16, 22, 32 (Orders). While Bayuk's *pro se* status can excuse his failure to address good cause in his first motion, his repeated failures to heed the Court's instruction thereafter are not excusable. Indeed, the Court explicitly communicated to Defendant that if his renewed motion seeking to vacate default did not conform with the instructions in its previous Orders denying the relief sought, "he may face a recommendation from the undersigned to the Hon. Edward S. Kiel, U.S.D.J. that the requested relief be *denied with prejudice* . . . ." ECF No. 32 (Order) (emphasis in original). Notwithstanding, Defendant has repeatedly failed to put forth any facts or arguments that, even under a less stringent standard, would give the Court any basis to find good cause to vacate default. Such failure goes beyond mere ignorance or miscommunication and rises to the level culpable conduct. Therefore, the Court finds that the final factor weighs against vacating default.

Based on an analysis of the three good cause factors, the Court finds that two out of the three factors weigh against vacating default and one slightly supports it. Accordingly, the Court recommends that Defendant's motion to vacate default be denied.

12

B. **Plaintiff's Cross-Motion for Default Judgment**

Under Federal Rule of Civil Procedure 55(a), "a district court has discretion to enter a default judgment when a party has failed to plead or otherwise defend in an action." *Chanel, Inc. v. Craddock*, No. 05-1593, 2006 WL 469952, at *2 (D.N.J. Feb. 27, 2006) (citing *D.B. v. Bloom*, 896 F. Supp. 166, 169-70 (D.N.J. 1995)). Before entering a default judgment, a court must first ensure that: (1) it has personal jurisdiction over the defaulting party and subject matter jurisdiction over the case; (2) service was proper; (3) the party seeking default judgment has presented a legitimate cause of action; and (4) the entry of default judgment is proper. *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund, Vacation Fund, & Painters Dist. Council 711 Finishing Trades Institute v. Leo Constructing, LLC*, 718 F. Supp. 3d 436, 441 (D.N.J. 2024) (cleaned up).

1. Jurisdiction

First, the Court has personal jurisdiction over Defendant Bayuk. "Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Because this Court sits in New Jersey, the Court applies New Jersey's long-arm statute, which "provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 149 (3d Cir. 1992)). "Minimum contacts exist if the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections

13

of its laws." *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 796-97 (D.N.J. 1996) (cleaned up) (footnote omitted).

Here, such minimum contacts exist. The Property, which is located in New Jersey, was transferred from Bayuk to MAXTMAX—of which he is the only member—for $1.00 of consideration. Compl. ¶ 20. Bayuk then recorded the transfer with the Mercer County Clerk's Office. *Id.* Based on these facts, the Court finds that Defendants purposefully availed themselves of the benefits and protections of New Jersey state law in executing the deed to the Property, transferring the Property, and recording the transfer of the Property with the Clerk of Mercer County, New Jersey.

Moreover, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (diversity jurisdiction). Plaintiff is a citizen of the State of Nevada; Defendant Bayuk is a citizen of the State of California; and Defendant MAXTMAX, LLC is a single member LLC, whose sole member is Bayuk; therefore, MAXTMAX, LLC is considered a citizen of California.[7] *See* ECF No. 6 (Diversity Disclosure Statement). Further, the Complaint alleges that the amount in controversy exceeds the $75,000, the required minimum based on the voidable transfer of the Property valued at anywhere between $210,000 and $260,300. *Id.* ¶ 7.

2. <u>Service</u>

Plaintiff also properly served both Defendants with process. Defendant MAXTMAX's authorized agent was personally served with a copy of the summons, the complaint, and a notice of *lis pendens* on October 24, 2023, consistent with the requirements under Federal Rule of Civil Procedure 5(a)(1). *See* ECF No. 4 (Aff. of Service on MAXTMAX). Defendant Bayuk was also

---

[7] The citizenship of an LLC is determined by the citizenship of each of its members. *See Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

14

personally served with a copy of the summons, the Complaint, and a notice of *lis pendens* on October 26, 2023. *See* ECF No. 5 (Aff. of Service on Bayuk). Finally, the Court notes that Bayuk has not raised any challenges to service in his motion papers.

      3.      <u>Legitimate Cause of Action</u>

"In assessing a motion for default, the court must also take a quick look to the merits and assess the plaintiff's claim." *Baymont Franchise Sys., Inc. v. Narnarayandev, LLC*, 348 F.R.D. 220, 229 (D.N.J. 2024) (citations omitted). Plaintiff must demonstrate that the Complaint "sufficiently plead[s] legitimate causes of action." *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Indep. Wallcovering, Inc.*, No. 20-7084, 2022 WL 4773694, at *2 (D.N.J. Oct. 3, 2022).

Here, accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has pleaded a viable claim under the New Jersey Uniform Voidable Transactions Act. The Complaint and its attachments reflect that Defendant Bayuk is a debtor and that he incurred an obligation to Plaintiff before he transferred the Property to MAXTMAX. Further, the Complaint pleads facts that, if taken as true, demonstrates that Defendant transferred the Property with the actual intent to hinder, delay, or defraud his creditors because the transfer was made without receiving a reasonably equivalent value. *See* Compl. ¶¶ 21-25. Accordingly, the Court finds that Plaintiff has pleaded a legitimate cause of action.

      4.      <u>Whether Default Judgment is Proper</u>

Finally, the Court must assess whether the entry of default judgment is proper. To make that determination, "courts must examine: '(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct.'" *Trustees*, 718 F. Supp. 3d at 441 (quoting *Chamberlain v. Giampapa*,

210 F.3d 154, 164 (3d Cir. 2000)); *see also Sidewinder Films, LLC v. Sidewinder Films, LLC*, No. 19-13992, 2022 WL 6964829, at *2 (D.N.J. Oct. 11, 2022) (same). The factors that courts consider when deciding whether to vacate default under Rule 55(c) are the same factors courts consider when deciding whether to enter default judgment. *See J & J Sports Prods., Inc. v. Archie*, No. 17-745, 2019 WL 1125876, at *1 n.2 (M.D. Pa. March 12, 2019) (citing *Malibu Media, LLC v. Waller*, No. 15-3002, 2016 WL 184422, at *2-3 (D.N.J. Jan. 15, 2016) (noting that the same factors apply when considering whether to impose default judgment or vacate default).

For the same reasons set forth above, the Court respectfully recommends that Plaintiff's Cross-Motion for Default Judgment be granted. While the denial of default judgment will not necessarily prejudice Plaintiff, Defendant Bayuk has not proffered a meritorious defense and the cause of delay is a result of Defendant's culpable conduct. Furthermore, as to MAXTMAX, the Court notes that no attorney has entered an appearance on its behalf to proffer a defense, despite the fact that a limited liability company—even one with a single member—cannot proceed *pro se*. *See Dougherty v. Snyder*, 469 F. App'x 71, 72 (3d Cir. 2012) (citations omitted). Given these facts, the Court respectfully recommends that default judgment be imposed against Defendants Edward Bayuk and MAXTMAX.

C. **Defendant's "Independent Action" to Set Aside Default Judgment**

While Defendant's motion to vacate default and Plaintiff's cross-motion for default judgment were pending, Plaintiff filed an "Independent Action" to set aside a default judgment. ECF No. 43. No default judgment, however, has been entered against Bayuk in this matter. *See* Dkt. Sheet. Because Bayuk's request is premature, this Court recommends that it be denied without prejudice. And if Defendant intended his "Independent Action" to be a motion to vacate

16

the Clerk's entry of default against him, the Court respectfully recommends that request be denied for the same reasons outlined above.[8]

## CONCLUSION

For the foregoing reasons, it is this **16th** day of **May 2025**, respectfully recommended as follows: (1) Defendant Edward Bayuk's Motion to Vacate Default be **DENIED WITH PREJUDICE**; (2) Plaintiff William A. Leonard, Jr.'s Cross-Motion for Default Judgment be **GRANTED**; and (3) Defendant's "Independent Action" be **DENIED WITHOUT PREJUDICE**, insofar as it seeks relief from final judgment because it is premature.  Pursuant to Federal Rule of Civil Procedure 72 and Local Civil Rule 72.1(c)(2), the parties shall have **fourteen (14) days** from the date of this Report and Recommendation in which to file any objections with the Court.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Hon. Edward S. Kiel, U.S.D.J.

---

[8] The Court also notes that Defendant's brief in support of his "Independent Action" still fails to address any of the good cause factors under Rule 55(c) and thus, it does not alter the Court's recommendation.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **WILLIAM A. LEONARD, JR.**, <br><br> **Plaintiff,** <br><br> v. <br><br> **EDWARD BAYUK, et al.,** <br><br> **Defendants.** | Civil No. 23-21314 (ESK)(EAP) |

**PROPOSED ORDER**

This matter having come before the Court on Defendant Edward Bayuk's motion seeking to vacate default, *see* ECF Nos. 33; and Plaintiff William A. Leonard opposing the motion and bringing a cross-motion seeking default judgment against Defendants, ECF No. 35; and Defendant Bayuk having filed a reply in support of his motion, ECF No. 39; and the Court noting that Defendant separately filed an "Independent Action" motion seeking the same relief as in his pending motion to vacate default, *see* ECF No. 43; and the parties having been notified that they have fourteen (14) days from receipt of the Report and Recommendation to file and serve objections pursuant to Local Civil Rule 72.1(c)(2); and no objections having been received; and the Court finding that the Report and Recommendation is neither clearly erroneous nor contrary to law; and for good cause shown:

**IT IS** this ___ day of _____ 2025,

**ORDERED** that the Report and Recommendation is **ADOPTED**; and it is further

**ORDERED** that Defendant Edward Bayuk's motion to vacate default, ECF No. 33, is **DENIED WITH PREJUDICE**; and it is further

**ORDERED** that Plaintiff William T. Leonard's cross-motion for the entry of default judgment against Defendants Edward Bayuk and MAXTMAX LLC is **GRANTED**; and it is further

**ORDERED** that Defendant Edward Bayuk's "Independent Action" motion to vacate default judgment under Federal Rule of Civil Procedure 60(b)(3) is **DENIED WITHOUT PREJUDICE** as premature; and it is further

**ORDERED** that the Clerk's Office shall forward a copy of this Order to Defendant Edward Bayuk via regular mail and shall enter a notation on the docket indicating the date upon which this Order was mailed to Defendant.

_____
EDWARD S. KIEL, U.S.D.J.